# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA K. SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:15cv1688 |
| v. ) | **Electronic Filing** |
| ) | |
| INDIANA UNIVERSITY OF ) | |
| PENNSYLVANIA and WILLIAM D. ) | |
| SPEIDEL, III, ) | |
| ) | |
| Defendants. ) | |

## **OPINION**

### I. INTRODUCTION

Presently before the Court is the motion for summary judgment filed on behalf of Indiana University of Pennsylvania ("University") and William D. Speidel, III, (*collectively*, "Defendants"), pursuant to Federal Rule of Civil Procedure 56(a). (ECF No. 31). Defendants seek judgment as a matter of law with respect to all claims stated in the amended complaint filed by Patricia K. Simmons ("Plaintiff") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 *et seq.* ("PHRA"). This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). After careful consideration of the motion, the memoranda of the parties, and the entire record, the Court will grant Defendants' motion for summary judgment.

### II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was employed by the University as a Development Officer/Major Gift Officer[1] beginning February 11, 2008, and ending December 31, 2014.  (ECF No. 33 ¶¶ 1 – 2).  Development Officers were tasked with soliciting and closing "major gifts," defined as gifts of $25,000.00 or more.  (ECF No. 33 ¶ 33).  Annual "giving campaigns" were run by separate staff at the University, and were focused upon soliciting smaller gifts from a large donor pool.  (ECF No. 33 ¶¶ 31 – 34).

William Speidel was hired by the University during Plaintiff's period of employment, beginning as Associate Vice President for Development in 2011 before becoming Vice President for University Advancement in 2012.  (ECF No. 33 ¶ 4).  As Associate Vice President for Development, Speidel was initially Plaintiff's immediate supervisor, replacing former supervisor Lynn Barger, and was responsible for managing the University's fundraising program.  (ECF No. 33 ¶¶ 12, 14, 37).  He also supervised five other Development Officers: Wally Stapleton, Bonnie Juliette, Shari Trinkley, Susan Stake, and Debra Valentine Gray.  (ECF No. 33 ¶¶ 17 – 18).  All Development Officers were assigned to a particular college within the University for fundraising purposes; Plaintiff was assigned to the College of Health and Human Services, and the College of Humanities and Social Sciences.  (ECF No. 33 ¶¶ 19 – 20).  Mark Spitzer was hired in October of 2013 to replace Shari Trinkley following her retirement; Spitzer took over fundraising for the College of Health and Human Services from Plaintiff.  (ECF No. 33 ¶¶ 27 – 28, 114, 118).

Around the time that Plaintiff was hired, the University had been implementing changes to its fundraising process.  (ECF No. 33 ¶ 8).  When Speidel joined the University, he concluded

---

[1] The parties use these position titles interchangeably.  (ECF No. 33 ¶ 3 n. 1).  Accordingly, the Court will hereinafter refer to Plaintiff's job title as "Development Officer."

2

that the Development Office was underperforming, due – at least in part – to a lack of accountability amongst the Development Officers. (ECF No. 33 ¶ 15). This was based upon the findings of a consultant, previously engaged by the University, which pointed to managerial instability stemming from constant turnover. (ECF No. 33 ¶ 16).

When Speidel was promoted to Vice President for University Advancement in 2012, Evan Bohnen was hired by the University to replace him as Associate Vice President for Development in January 2013. (ECF No. 33 ¶ 24). Bohnen then became Plaintiff's immediate supervisor. (ECF No. 33 ¶ 25). Bohnen's impression of the Development Office was that it was "underperforming." (ECF No. 33 ¶ 58). He believed that the culture of the office needed to change, and that there needed to be a serious redirection of focus from smaller, annual planned gifts to "outright giving." (ECF No. 33 ¶ 59). However, he did not review any of the Development Officers' performance evaluations when he assumed his position, so that "everyone had a blank slate." (ECF No. 33 ¶ 62).

Plaintiff received her first performance evaluation in July of 2008 while still working under Barger. (ECF No. 33 ¶¶ 37 – 38). On a scale of 1 through 3, Plaintiff received a 2, indicating that she was "At or Above Expectations." (ECF No. 33 ¶ 39). While Barger noted that Plaintiff was "taking a little more time than expected to start making calls and prospect visits," Barger also found that Plaintiff "has a positive attitude and was willing to jump right in," and she expected Plaintiff would "quickly begin to make substantial progress." (ECF No. 33 ¶ 40). Plaintiff successfully completed her probationary period on August 11, 2008, after which she received a 3.0% annual pay increase based on her performance. (ECF No. 33 ¶¶ 41 – 42).

At Plaintiff's first annual performance review in July 2009, she earned a score of 2.25 on a scale of 1 through 3. (ECF No. 33 ¶¶ 43 – 44). Barger reported that, although Plaintiff had

3

"undertaken her development role at IUP with enthusiasm," she needed "additional direction and focus to concentrate on soliciting and closing major gifts." (ECF No. 33 ¶ 44). Plaintiff received a score of 2 on her June 2010 evaluation, with Barger stating that Plaintiff needed "to be much more focused on major gift work," and that she "would benefit significantly from additional mentoring and professional development." (ECF No. 33 ¶ 45). Plaintiff subsequently received a 2.0% merit-based salary increase. (ECF No. 33 ¶ 46).

Speidel's first annual evaluation of Plaintiff in June 2011 resulted in a score of 2.25. (ECF No. 33 ¶ 48). Plaintiff's need to improve performance soliciting and closing major gifts was again noted. (ECF No. 33 ¶ 49). Speidel conducted the next performance review in June 2012, and gave Plaintiff a score of 2. (ECF No. 33 ¶¶ 50 – 51). She was noted to be weakest with contacting, visiting, providing gift ideas, and soliciting gifts through visits, correspondence, phone calls, and other potential opportunities to interact with potential donors. (ECF No. 33 ¶ 51). Plaintiff received a merit-based salary increase of 2.0%. (ECF No. 33 ¶ 69).

Plaintiff received her first annual performance appraisal from Bohnen in June 2013. (ECF No. 33 ¶ 70). Bohnen rated her on a new scale of 1 through 5; Plaintiff received a score of 3, indicating "Fully Performing/Meets Expectations." (ECF No. 33 ¶ 70). In his comments, Bohnen recorded that Plaintiff needed to focus on pursuing major gifts of at least $25,000.00, and cultivating the social contacts necessary to achieve this goal. (ECF No. 33 ¶ 71). Plaintiff also needed to make raising one million dollars for capital construction a priority. (ECF No. ¶ 71).

On June 26, 2013, due to a change in University policy, employees at Plaintiff's level were to be subject to employment contracts not to exceed two years in duration; Plaintiff was accordingly informed that she was appointed to her position for a year ending June 30, 2014.

4

(ECF No. 33 ¶¶ 68, 72).  Further extensions would be made upon approval by management. (ECF No. 33 ¶ 72).  Plaintiff received a merit-based salary increase of 2.5%.  (ECF No. 33 ¶ 73).

On June 4, 2014, Plaintiff received her second annual performance evaluation by Bohnen.  (ECF No. 33 ¶ 74).  Plaintiff's score dropped to 2, indicating that she "Needs Improvement."  (ECF No. 33 ¶ 74).  In his comments, Bohnen stated that he was "disappointed with the lack of discipline executing a plan of action for fund raising" during the most recent fiscal year, and noted that Plaintiff did not demonstrate that meeting the one-million-dollar capital campaign goal outlined in her last evaluation was a priority.  (ECF No. 33 ¶ 75).  Plaintiff noted on the evaluation that she disagreed with Bohnen's assessment, but provided no further explanation.  (ECF No. 33 ¶ 76).

On July 23, 2014, Speidel informed Plaintiff by letter that her contract would only be renewed through December 31, 2014, due to her recent evaluation.  (ECF No. 33 ¶¶ 77 – 79). Plaintiff accepted her reappointment on these terms, but expressed her continued disagreement with the evaluation completed by Bohnen.  (ECF No. 33 ¶ 81).  Plaintiff also did not receive a pay increase for the six-month extension.  (ECF No. 33 ¶ 83).

By letter dated December 11, 2014, Associate Vice President of Human Resources Craig S. Bickley informed Plaintiff that her employment would not be extended beyond the end of her appointment on December 31, 2014.  (ECF No. 33 ¶ 96).  She was the only Development Officer whose contract was not renewed.  (ECF No. 33 ¶ 97).  A University database utilized for fundraising purposes showed that in the last fiscal year in which Plaintiff was employed (for six months), she raised $308,091.79 in cash and $299,018.19 in commitments, she made 94 "contacts", 35 "visits," and 7 "asks."  (ECF No. 40 ¶ 142).  This was the most money raised by all Development Officers, other than Bonnie Juliette and Wally Stapleton.  (ECF No. 40 ¶ 143).

Plaintiff also made more contacts and visits than any other Development Officer, with the exception of Wally Stapleton. (ECF No. 40 ¶¶ 144 – 45).

On or about February 25, 2015, Plaintiff filed a Charge of Discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (ECF No. 33 ¶¶ 129 – 30). Plaintiff subsequently filed a complaint in this Court alleging claims under the ADEA, EPA, and PHRA. The operative amended complaint followed on April 20, 2016. Defendants filed an answer on May 4, 2016. A motion for summary judgment by Defendants followed. The matter is fully briefed and ripe for disposition. (ECF Nos. 32 – 34, 39 – 41, 44)

**III.  STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*. 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e, depositions, answers to interrogatories,

6

and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.2d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F.App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

**IV.    DISCUSSION**

*A. ADEA*

In the instant motion, Defendants first argue that they are entitled to judgment as a matter of law with respect to Plaintiff's ADEA claim, because the Eleventh Amendment confers upon state entities immunity from monetary damages, and Plaintiff has failed to demonstrate the applicability of any available exceptions. (ECF No. 32 at 4 – 13). As an initial matter, the Court notes that "'Eleventh Amendment immunity is subject to three exceptions: 1) congressional abrogation, 2) state waiver or consent, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law.'" *Durnan v. Del*. 244 F.Supp.3d 424, 429 (D. Del. 2017) (quoting *MCI Telecomm. Corp. v. Bell Atlantic-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). As pointed out by Defendants, Congress has not validly abrogated the states'

7

immunity from suit for damages under the ADEA, *Kreutzberger v. Pa. Dep't of Corr.*, 684 F.App'x 107, 108 (3d Cir. 2017) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000)), and Pennsylvania has not waived Eleventh Amendment protection. *Id.* (citing *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000)). Accordingly, Plaintiff is limited to the third exception – a claim for prospective relief for an ongoing violation of federal law by state officers.

At Count I of the amended complaint, naming Speidel as the only Defendant, Plaintiff requests that the Court take the following action:

> a. Enter a declaratory judgment that the practices, policies, customs and usages complained of herein are unlawful and violative of the ADEA;
>
> b. Permanently enjoin the Defendant from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices and actions shown to be in violation of applicable law;
>
> c. Order modification or elimination of the practices, policies, customs and usages set forth herein and all other such practices and actions shown to be in violation of applicable law so that the said practices, etc., do not permit age discrimination of any kind or type;
>
> d. Reinstate Plaintiff to her previous position, or a position of comparable salary, benefits, rank, seniority, and stature within Defendant IUP;
>
> e. Adjust the wage rates, salary, bonuses, position and benefits for Plaintiff to that level which she would be enjoying but for the discriminatory practices and actions of the Defendant;
>
> f. Compensate and make Plaintiff whole for all earnings, salary, wages, and other benefits she would have received but for the discriminatory practices and actions of Defendant;
>
> g. Order that Defendant destroy all derogatory comments and discipline files regarding Plaintiff and expunge all references to the circumstances of any such discipline;
>
> h. Award Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and costs of suit;
>
> i. Grant such other relief as may be just and proper including but not limited to a grant of compensatory, liquidated, exemplary and/or punitive damages; and

j. Protect Plaintiff from further continuing discrimination and/or retaliation.

(ECF No. 13 ¶ 29).

In response to Defendants' motion, Plaintiff concedes that her demands at paragraph 29, sections (f), (h), and (i), are not requests for prospective relief, and consequently withdraws these sections from consideration. (ECF No. 39 at 4 – 5). Nonetheless, she argues that Eleventh Amendment immunity does not bar her entire ADEA claim, and that the remaining portions of paragraph 29 constitute proper requests for prospective relief.

That Plaintiff labels the relief sought as "prospective" is not dispositive, however; the "Court must look to the substance rather than the form of the relief requested to determine whether…claims are barred by the Eleventh Amendment." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996). "'The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.'" *Pa. Fed'n of Sportsman's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *MCI Telecomm. Corp. v. Bell Atlantic-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). Central to this analysis is whether there exists an ongoing violation of federal law to remedy. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 294 (1997).

Defendants argue that Plaintiff has failed to adduce any evidence of present, ongoing violations. (ECF No. 32 at 7 – 9). Indeed, the Court observes that Plaintiff's response makes no mention of any ongoing violations of federal law when addressing Defendants' arguments pertaining to Eleventh Amendment immunity. (ECF No. 39 at 4 – 5). Neither Plaintiff's briefing, nor her counterstatement of undisputed material facts, point to record evidence of unlawful activity subsequent to Plaintiff's termination by the University. (ECF Nos. 39 – 40).

Plaintiff's amended complaint does contain the following statement:

9

> Plaintiff's termination was part of an ongoing, and continuing discriminatory practice on the part of the Defendants with respect to age and compensation. Practices which continue even after Plaintiff's termination.

(ECF No. 13 ¶ 19). However, a party opposing summary judgment cannot rely upon unsubstantiated allegations contained in a complaint, *Collins v. Kimberly-Clark Pa., LLC*, 247 F.Supp.3d 571, 585 (E.D. Pa. 2017), and if factual support exists, it is incumbent upon the non-moving party to direct the court's attention to same in the record. *DeShield's v. Int'l Resort Prop. Ltd.*, 463 F.App'x 117, 120 (3d Cir. 2012) (citing *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009)). Plaintiff has failed, in this regard.

The Court recognizes that the relief sought by Plaintiff, including her request for reinstatement, appears to be prospective in nature. *Koslow v. Commw. of Pa.*, 302 F.3d 161, 179 (3d Cir. 2002). However, when determining whether a claimant has satisfied the third exception to Eleventh Amendment protection, the Supreme Court in *Papasan v. Allain* emphasized that courts must focus on whether "a violation of federal law by a state official is ongoing as opposed to [whether] federal law has been violated at one time or over a period of time in the past." 478 U.S. 265, 277 – 78 (1986). Pleading requests for prospective relief will be unavailing if there is no evidence of a pervasive or ongoing violation of federal law. *Jakomas v. McFalls*, 229 F.Supp.2d, 426 – 27 (W.D. Pa. 2002); *Meyers v. Cal. Univ. of Pa.*, 2013 WL 795059, at *10 (W.D. Pa. Mar. 4, 2013); *Roper v. Van Mater*, 2011 WL 5557527, at *3 (D. N.J. Nov. 15, 2011).

Where, as here, the evidence presented illustrates only potentially discriminatory acts prior to and including termination, an ongoing violation has not been shown. *See Lankford v. Short*, 2017 WL 2985396, at *2 (D. Del. June 13, 2017) (quoting *Republic of Para. v. Allen*, 949 F.Supp. 1269, 1273 (E.D. Va. 1996)) ("The…violations ended when Plaintiff was terminated. Plaintiff's unemployment is a consequence of Defendant's failure to abide by the law.

10

'Nonetheless, it is still a consequence of the violation and not a continuing violation.'"). "'[M]ere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation.'" *Burchill v. Commw. of Pa.*, 2000 WL 190240, at *2 n. 1 (E.D. Pa. Feb. 4, 2000) (quoting *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999)). Accordingly, Plaintiff's failure to present this Court with evidence of ongoing violations necessitates granting judgment as a matter of law in favor of Defendants at Count I of the amended complaint.

### B. *EPA and PHRA*

In her response in opposition to Defendants' motion, Plaintiff voluntarily withdraws her claims at Counts II and III of the amended complaint. (ECF No. 39 at 1). Accordingly, Plaintiff's EPA and PHRA claims will be dismissed without further discussion.

### V. CONCLUSION

Based upon the forgoing, and viewing all record evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to adduce evidence sufficient to establish the applicability of any exception to Eleventh Amendment immunity. Accordingly, Defendants' motion for summary judgment will be granted with respect to Count I of the amended complaint. As Plaintiff has elected to voluntarily withdraw her claims at Counts II and III, those claims will be dismissed.

An appropriate order will follow.

Date: March 2, 2018

                s/David Stewart Cercone
                David Stewart Cercone
                Senior United States District Judge

cc. John W. Murtagh
Adam K. Hobaugh
Scott A. Bradley
Yana L. Warshafsky

(*Via CM/ECF Electronic Mail*)